Elbert S. Tillotson and Mary W. Tillotson v. Commissioner.
Elbert S. Tillotson v. Commissioner
Docket Nos. 23236, 23237.
United States Tax Court
1953 Tax Ct. Memo LEXIS 365; 12 T.C.M. (CCH) 171; T.C.M. (RIA) 53056; February 19, 1953
*365 Held, on the facts, petitioners are entitled to deduct from their gross income for the taxable year 1943, either under Section 23 (e) (1) or (2), Internal Revenue Code, a loss incurred upon the sale of real property acquired and at all times held for sale at a profit in connection with their real estate development and construction business, notwithstanding petitioners resided thereon for a period of approximately five years. Joseph W. Price, 3rd, Esq., for the petitioners. Charles J. Hickey, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: These proceedings, consolidated for hearing and opinion, involve a deficiency *366 of $4,744.57 in income taxes for the calendar year 1943. [1] By amended petition, petitioners alleged an overpayment in an amount not less than $591.83. The principal issue is whether petitioners are entitled to a deduction for a loss sustained by them in the sale of real property in 1943, under the provisions of Section 23 (e) (1) and (2) of the Internal Revenue Code, and if so in what amount. The proceedings were heard upon a partial stipulation of facts and exhibits attached thereto, and oral testimony and exhibits introduced at the hearing. Findings of Fact The facts stipulated are incorporated herein by reference. Other facts included herein are found from the oral testimony and exhibits filed at the hearing. Petitioners, Elbert S. Tillotson and his wife, Mary W. Tillotson, presently *367 reside in French Morocco, North Africa. A joint return for the period involved was filed on or about March 15, 1944 with the collector of internal revenue for the first district of Pennsylvania. Waivers were filed, which extended the period of limitation upon the assessment and collection of the tax to June 30, 1949. The tax liability of Mary W. Tillotson is involved herein only by reason of the filing of a joint return. Elbert S. Tillotson is a graduate civil engineer and from the time of his graduation from college in 1917 has been engaged in the real estate, building and construction business, in the employ of various building and construction companies, individually, or in partnership with others. Prior to April 1, 1936 petitioner and one C. P. Campbell, since deceased, discussed the possibility of entering into a partnership for the development of real estate and with that in mind began to search for a tract of land suitable for development. In the course of their search they learned of three tracts of land situated contiguous to each other and located in a rural area on the north side of Providence Road, Upper Darby Township, Delaware County, Pennsylvania, hereinafter referred *368 to as plots numbers 1, 2, and 3. Plot No. 1 was an irregular shaped tract having a frontage of approximately 125 feet on Providence Road, running north an equal width approximately 200 feet, then widening out to the east approximately 216 feet more, and in its overall width of approximately 300 feet extending northward to a total overall depth from Providence Road of approximately 408 feet. Plot No. 2 was a rectangular tract fronting on Providence Road approximately 100 feet with a depth of approximately 200 feet lying south of the main portion of plot 1 and to the east of the narrow portion of plot 1. Plot No. 3 was a substantially rectangular shaped tract lying west of plot No. 1 with a frontage of approximately 375 feet on Providence Road and extending northward some 585 feet. On April 1, 1936 petitioner Elbert S. Tillotson entered into an agreement with the then owner, Minnie S. McKissick, for the purchase of plot No. 1 for the sum of $7,000. Settlement took place on July 28, 1936, the purchase price being discharged for $1,000 in cash and a $6,000 purchase money mortgage. Campbell was not present when settlement was made, due to illness or absence from the state, just which *369 is not clear from the record. Title was taken in the name of Elbert S. and Mary W. Tillotson as tenants by the entireties. The mortgage was signed by Elbert S. and Mary W. Tillotson. Title charges brought the total cost of plot No. 1 up to $7,141.08. At the time of its acquirement there were improvements thereon, consisting of a 2 1/2 or 3 story brick and stucco house, a two car garage built of hard lumber and stucco, a barn foundation, and a chicken-house, all valued at a total of $2,500. The house was in a bad state of repair and uninhabitable at the time. On July 1, 1936 Elbert S. Tillotson and C. P. Campbell formed the Tillotson Construction Company, a partnership, for the purpose of acquiring and improving real property for sale and profit, and to carry on a general construction business. Tillotson was the active business manager and Campbell was a silent partner. The partnership agreement contained, among other things, the following: "ART. 8. In the event of the death of either partner, the surviving partner and the estate of the deceased partner shall bid for the entire property that is held in the name of the partnership, the property to be sold to the highest bidder. *370 * * *
"ART. 11. The initial capital investment of each partner is $1,000.00 This has been paid in cash by E. S. Tillotson in acquiring title to a property assumed in his name and to be handled in the partnership as outlined in Article # 12, and also equaled in cash by C. P. Campbell to be utilized towards acquiring additional properties. "ART. 12. It is mutually agreed hereby that the McKISSICK property [Plot # 1] consisting of approximately 2 1/2 acres and improvements to which title has been acquired by E. S. Tillotson and Mary W. Tillotson for $7,000 subject to a purchase money mortgage of $6,000 shall be included in the partnership on the following basis: 1. Improvements are to be started at once on remodeling the house, garage and grounds, etc., the cost of which shall be between $3,000.00 and $4,000.00 as estimated. 2. At the completion of the improvements, when the house is ready for occupancy, a selling price of not less than the cost, plus 10%, shall be established for the property. 3. Both partners may bid for the property and the property shall be sold to the highest bidder who shall assume the mortgage, pay the other partner his proportionate cost and *371 profit and be obligated to make settlement within sixty days. "ART. 13. Both partners to this agreement, having read it in full and being in accord with it in its entirety, do hereby accept same as true understanding of their agreements and that there are no understandings verbal or otherwise existing between them other than herein contained." The partnership carried plot No. 1 as an asset at a cost of $7,141.08. No formal books of account were maintained by the partnership prior to March 31, 1937. During the period between the formation of the partnership and March 31, 1937 its transactions were set forth in informal memoranda. When books were opened, plot No. 1 was entered thereon as follows: March 31, 1937
Real estate (T-R)
$1,141.08
To E. S. Tillotson Capital Account
$2,230.44
(the difference betwen these two
figures represents sundry debits
and credits for other items unre-
lated to this tract.)
March 31, 1937
Real estate (T-R)
$6,000.00
Mortgage payable house
$6,000.00
For recording mortgage payable
on McKissick house. Mortgage
held by Mrs. Minnie McKissick.
Date of mortgage July 28, 1936.
Interest at 6% year. Payable
July 28, and January 28. Deed
in name of E. S. & M. W. Tillotson
*372 On August 18, 1936 the partnership acquired plots Nos. 2 and 3, the purchase price being discharged by cash and an $8,000 purchase money mortgage, in the total amount of $10,188.98, and carried them on its books as an asset of the partnership. Deed was taken in the names of Elbert S. Tillotson and C. Percy Campbell. These two plots contained no improvements but were vacant farm land. Prior to its purchase petitioner Elbert S. Tillotson prepared a drawing setting forth a plan for the development of plot No. 1, contemplating the complete demolition of the existing structures, its subdivision into a number of building lots, and the construction of residences thereon for sale to the public. After the purchase agreement was entered into but before the purchase was complete, title examination disclosed the existence of an easement which necessitated the abandonment of the proposed subdivision of plot No. 1. The partners, nevertheless, concluded to go ahead with its purchase and to make improvements to the structures thereon. Improvements were subsequently made on the house and garage situated on plot No. 1 at a total cost of $17,445.71. "For Sale" signs were placed on the property about *373 the time the improvements were completed and the property was also listed with real estate brokers. They were unable to effect an immediate sale, however, and the prospects for an early sale did not appear favorable due to the high price which the excessive cost of the improvements necessitated being placed upon it. These or similar signs remained on the property and it continued to be listed with real estate brokers until finally sold by petitioners in January 1943. On August 2, 1937 plot No. 1 and the improvements thereon were sold to petitioner Elbert S. Tillotson and his capital account on the books of the partnership was debited with the sum of $20,427.47, made up as follows: Cost per books residence
$16,192.68
Barn
2,394.11
$18,586.79
Less interest paid
180.00
$18,406.79
Plus 10%
1,840.68
$20,247.47
Interest paid
180.00
$20,427.47 This sum included the equity in the land in the amount of $1,141.08 but did not include the $6,000 purchase money mortgage thereon. On or about the same time plot No. 2, which adjoined plot No. 1, was likewise sold to petitioner Elbert S. Tillotson for the sum of $1,000 and the books of account of the partnership *374 caused to reflect such transfer. Prior to such transfers the partnership had unsuccessfully attempted to borrow money on plot No. 1 for the purpose of additional partnership working capital. The above transfers were made after assurances that a loan would be made to petitioner Elbert S. Tillotson individually but not to the partnership, if plot No. 1 was taken off the books of the partnership and plot No. 2 was incorporated into plot No. 1 so as to give greater frontage on Providence Road. After plots Nos. 1 and 2 were transferred on the books of the partnership to petitioners, they placed a mortgage thereon in the amount of $12,500. Of this sum $6,000 was used to pay off the purchase money mortgage on plot No. 1 and the balance was put into the partnership account. Subsequent to its acquisition by the partnership plot No. 3 was subdivided into 14 lots with a road running through the middle of it and during 1937 and 1938 dwellings were erected and sold on four of these lots. In the latter part of 1937 petitioners moved into the residence situated on plot No. 1 and continued to reside thereon until it was sold by them on January 25, 1943. It was never petitioners' purpose or intention *375 in acquiring plot No. 1, making the improvements thereto or moving thereon, to make this their permanent home. Prior thereto petitioners had lived in the residence owned by them at 18 Ardmore Avenue in Lasdowne, Penn. After moving therefrom this residence was rented on a month to month basis until 1940, when it was sold by petitioners for the amount of the outstanding mortgage thereon to avoid foreclosure proceedings. The furnishings from their Ardmore Avenue house were inadequate to completely furnish the house on plot No. 1 and petitioners never completely furnished the latter. Prior to their moving to plot No. 1, several acts of vandalism had occurred with respect to the houses being built on plot No. 3, as well as the residence on plot No. 1. The partnership between petitioner Elbert S. Tillotson and C. P. Campbell was terminated and dissolved on December 20, 1939, petitioner taking over a construction contract which the partnership had in the city of Syracuse, N. Y., and all other assets of the partnership being transferred to Campbell. Plots Nos. 1 and 2 having previously been transferred on the books of the partnership to petitioners, were not specifically mentioned in the *376 dissolution agreement. In November 1939 petitioner Elbert S. Tillotson formed a partnership with Thomas F. Groux under the name of Tillotson and Company for the purpose of engaging in the building construction business. On February 10, 1941 Tillotson accepted employment with Leonard Construction Company in New York City. In January 1943, while still in the employ of Leonard Construction Company, he went to Mexico, where he was stationed until he left their employ in the latter part of 1946. In 1947 he went to the Philippines and remained there approximately three years. Since 1943 he has been back in the United States a maximum of about six or seven months. Plots Nos. 1 and 2 were sold by petitioners on January 25, 1943 to Edward E. and Kathryn L. Helm for the net sum of $15,650. The total cost to petitioners of this property was $27,427.47, consisting of the $20,427.47 charged to Elbert's capital account at the time of the transfer of plot No. 1 on August 2, 1937, the $6,000 mortgage thereon which he later paid off, and the $1,000 charged to his account for plot No. 2. Opinion The issue presented herein is whether the petitioners are entitled to a deduction from gross income *377 in the amount of $11,777.47, or any amount, representing a loss sustained in the sale of real property sold during the taxable year 1943. The pertinent statute is Section 23 (e) (1) and (2) of the Internal Revenue Code. [2] The pertinent facts are the purpose and intention of the taxpayer when the property was acquired, its subsequent uses or treatment and whether or not any change in the dominant motive for which the property was acquired, occurred between the time of its acquisition and sale. The language of the statute comprehends all phases of the taxpayers' relation to the subject matter, including their original acquisition thereof, its subsequent uses or treatment as well as its sale. Terry v. United States, 10 Fed. Supp. 183. *378 Petitioners contend that the real estate involved was originally acquired with the intent to sub-divide and develop it and then sell it to customers in the ordinary course of their business, or in the alternative, that the sale by petitioners was a sale of property acquired in a transaction entered into for profit, that there was never any change in the character of the transaction and therefore the loss sustained is deductible from their gross income under the statute cited. On the other hand respondent contends that petitioners acquired the property on their own behalf, not for the business of the partnership of which petitioner Elbert S. Tillotson was a member, but with the intention of having the partnership improve and renovate it for their use as a personal residence and that the loss which was incurred upon the sale of the property was therefore neither incurred in trade or business, nor in a transaction entered into for profit. We think petitioners' contentions must be sustained. The evidence clearly indicates that at the time the contract to purchase plot No. 1 was entered into petitioner, Elbert S. Tillotson, and C. P. Campbell intended to acquire this property, as well *379 as other property which was adjacent thereto and which was available, for the purpose of sub-dividing it, building houses thereon, and selling them for a profit. The discovery of an existing easement on the property only changed their plans with respect to subdividing plot No. 1 and to renovate the existing improvements thereon instead of building new houses. It was still their purpose to improve the property and attempt to sell it for a profit. The fact that for financing reasons the partnership's interest in the property was transferred on the books of the partnership to petitioner Elbert S. Tillotson, did not alter or change the business purpose for which the property was acquired, or the intention of the parties to attempt to sell the property for a profit. Neither did the fact that the petitioners moved into and occupied the residence on plot No. 1 for a period of approximately five years alter or change the character of the transaction or the purpose or intention of the partners or of petitioners individually to attempt to sell the property for a profit. We have found as a fact that at no time was it the intention of petitioners to make the residence on plot No. 1 their personal *380 residence. Prior to moving thereon they were living in a home which they owned of a size more suitable to their needs. The immediate cause for their moving was to protect this and other residences which petitioners were building on plot No. 3 from vandalism, and to keep the property more presentable and attractive to prospective purchasers. That petitioners at no time intended to make the residence on plot No. 1 their permanent personal residence is further evidenced by the fact that the furniture which they moved from their previous residence was inadequate to completely furnish this residence, and they never completely furnished it. In addition "For Sale" signs were placed on the property before the improvements were completed and these or similar signs were continuously exhibited on the property until it was finally sold by petitioners in January 1943. The property was also listed for sale with real estate brokers throughout this entire period. Nor do we think the fact that petitioners gave the residence on Providence Road as their address and referred to it as their personal residence in their income tax returns for the years 1941 and 1942 sufficient to change the character of *381 the transactions involved herein as contended by respondent. The right of the deductions claimed therein for taxes, interest paid on indebtedness, or travel and living expenses incurred by petitioner Elbert S. Tillotson while employed in New York City did not depend upon the character of petitioners' occupancy of this residence. The question herein we think is controlled by previous decisions of this Court to the effect that "Where a taxpayer acquires property with the intention of selling it at a profit, even though he may have resided thereon, if the predominant factor in its selection was the prospect of future profits, he is entitled to any loss sustained upon the sale thereof." Henry J. Gordon, 12 B.T.A. 1191, 1194; D. A. Belden, 30 B.T.A. 601, 602. The use of the property involved herein by petitioners as a residence was merely incidental to the dominant purpose which motivated petitioner Elbert S. Tillotson, both individually and as a member of the partnership with Campbell, in the acquisition of the property. We have examined the authorities cited by respondent, as well as many others, and do not find them inconsistent with the position we have *382 taken herein. Different results reached therein were due to the facts of the particular case which were materially different from the facts of the instant case. Respondent, on brief, has not questioned the amount but only the character of the deduction. We hold that petitioners are entitled to deduct from their gross income for the taxable year 1943 the sum of $11,777.47, representing the difference between $27,427.47, the total cost to petitioners of the property involved, and $15,650, the net sum for which the property was sold. Decision will be entered under Rule 50. Footnotes
1. Two statutory notices identical in every respect except as to address and the time within which a petition for redetermination might be filed, were mailed to petitioners on April 5, 1949, one to the Philippine Islands and the other to Philadelphia, Penn. Petitioners filed a petition for redetermination with respect to each statutory notice as a precautionary measure.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) LOSSES BY INDIVIDUALS. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * *↩